**UNITED STATES DISTRICT COURT**
**DISTRICT OF DELAWARE**

| | |
|---|---|
| CATHERINE COFFMAN, | ) |
| | ) |
| Plaintiff, | ) Case No. _____ |
| v. | ) |
| | ) **COMPLAINT FOR VIOLATIONS OF** |
| KANSAS CITY SOUTHERN, LYDIA I. | ) **THE FEDERAL SECURITIES LAWS** |
| BEEBE, LU M. CÓRDOVA, ROBERT J. | ) |
| DRUTEN, ANTONIO O. GARZA, JR., | ) |
| DAVID GARZA-SANTOS, JANET H. | ) JURY TRIAL DEMANDED |
| KENNEDY, MITCHELL J. KREBS, | ) |
| HENRY J. MAIER, THOMAS A. | ) |
| MCDONNELL, and PATRICK J. | ) |
| OTTENSMEYER, | ) |
| | ) |
| Defendants. | ) |

Plaintiff Catherine Coffman ("Plaintiff"), by and through her undersigned counsel, for her complaint against defendants, alleges upon personal knowledge with respect to herself, and upon information and belief based upon, *inter alia*, the investigation of counsel as to all other allegations herein, as follows:

**NATURE AND SUMMARY OF THE ACTION**

1. Plaintiff brings this action against Kansas City Southern ("KCS" or the "Company") and the members of KCS's Board of Directors (the "Board" or the "Individual Defendants") for their violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78n(a), 78t(a), and U.S. Securities and Exchange Commission ("SEC") Rule 14a-9, 17 C.F.R. § 240.14a-9, arising out of their attempt to be acquired by Canadian National Railway Company ("CN") through CN's subsidiary Brooklyn Merger Sub, Inc. ("Merger Sub") (the "Proposed Transaction").

2. On May 21, 2021, KCS announced that it had entered into an Agreement and Plan

of Merger (the "Merger Agreement") pursuant to which, each KCS shareholder will receive 1.129 CN common shares and $200.00 in cash for each share of KCS common stock they own. Upon completion of the Proposed Transaction, it is expected that former holders of KCS common stock and KCS preferred stock will own approximately 12.65% of the combined company, with former CN shareholders owning approximately 87.35%.

3.     On July 7, 2021, KCS filed a Schedule 14A Definitive Proxy Statement (the "Proxy") with the SEC. The Proxy is materially deficient and misleading because, inter alia, it fails to disclose material information regarding, the Company's and CN's financial projections and the financial analyses supporting the fairness opinions provided by the Company's financial advisors, Morgan Stanley & Co. LLC ("Morgan Stanley") and BofA Securities, Inc. ("BofA"). Without additional information, the Proxy is materially misleading in violation of the federal securities laws.

4.     The stockholder vote to approve the Proposed Transaction is forthcoming. Under the Merger Agreement, following a successful stockholder vote, the Proposed Transaction will be consummated. For these reasons and as set forth in detail herein, Plaintiff seeks to enjoin defendants from conducting the stockholder vote on the Proposed Transaction unless and until the material information discussed below is disclosed to the holders of the Company common stock, or, in the event the Proposed Transaction is consummated, to recover damages resulting from the defendants' violations of the Exchange Act.

## JURISDICTION AND VENUE

5.     This Court has jurisdiction over the claims asserted herein for violations of Sections 14(a) and 20(a) of the Exchange Act and SEC Rule 14a-9 promulgated thereunder pursuant to

Section 27 of the Exchange Act, 15 U.S.C. § 78aa, and 28 U.S.C. § 1331 (federal question jurisdiction).

6. This Court has jurisdiction over the defendants because each defendant is either a corporation that conducts business in and maintains operations within this District, or is an individual with sufficient minimum contacts with this District so as to make the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

7. Venue is proper in this District pursuant to 28 U.S.C. § 1391 because defendants are found or are inhabitants or transact business in this District.

## THE PARTIES

8. Plaintiff is, and has been at all times relevant hereto, a continuous stockholder of KCS.

9. Defendant KCS is a Delaware corporation, with its principal executive offices located at 427 West 12th Street, Kansas City, Missouri 64105. KCS's shares trade on the New York Stock Exchange under the ticker symbol "KSU."

10. Defendant Lydia I. Beebe has served as a director of the Company since 2017.

11. Defendant Lu M. Córdova has served as a director of the Company since 2010.

12. Defendant Robert J. Druten is Chairman of the Board and has served as a director of the Company since 2004.

13. Defendant Antonio O. Garza, Jr. has served as a director of the Company since 2010.

14. Defendant David Garza-Santos has served as a director of the Company since 2016.

15. Defendant Janet H. Kennedy has served as a director of the Company since 2019.

16. Defendant Mitchell J. Krebs has served as a director of the Company since 2017.

17. Defendant Henry J. Maier has served as a director of the Company since 2017.

18. Defendant Thomas A. McDonnell has served as a director of the Company since 2003.

19. Defendant Patrick J. Ottensmeyer has served as Chief Executive Officer of the Company since July 1, 2016, President since March 1, 2015, and a director since 2016.

20. Defendants identified in paragraphs 10-19 are referred to herein as the "Board" or the "Individual Defendants."

21. Relevant non-party CN is a Canadian corporation, with its principal executive offices located at 935 de La Gauchetière Street West, Montreal, Quebec, Canada H3B 2M9. CN is engaged in the rail and related transportation business. CN's shares trade on the New York Stock Exchange under the ticker symbol "CNI."

## SUBSTANTIVE ALLEGATIONS

**Background of the Company and the Proposed Transaction**

22. KCS is a holding company with domestic and international rail operations in North America. Its rail operations are strategically focused on the growing north/south freight corridor connecting key commercial and industrial markets in the central U.S. with major industrial cities in Mexico. KCS's wholly owned and controlled subsidiary, Kansas City Southern Railway Company ("KCSR"), is a U.S. Class 1 railroad founded in 1887. KCSR serves a ten-state region in the Midwest and southeast regions of the U.S. and has the shortest north/south rail route between Kansas City, Missouri and several key ports along the Gulf of Mexico in Alabama, Louisiana, Mississippi and Texas.

23. On March 11, 2021, the Company announced its second quarter 2021 financial results and business developments. Second quarter revenues were $749.5 million, an increase of

37% from the second quarter 2020, in which revenues were $547.9 million. Overall, carload volumes were up 31% compared to the prior year. Adjusted net income for the quarter reached $188.8 million, as compared to $109.7 million for the corresponding quarter of the prior year.

24. On May 21, 2021, KCS and CN issued a joint press release announcing the Proposed Transaction, which states, in relevant part:

> MONTREAL and KANSAS CITY, Mo., May 21, 2021 -- CN (TSX: CNR, NYSE: CNI) and Kansas City Southern (NYSE: KSU) ("KCS") today announced that they have entered into a definitive merger agreement to create the premier railway for the 21st century.
>
> Under the terms of the agreement, which was unanimously approved by the Board of Directors of each company, KCS shareholders will receive $3252 per common share based on CN's May 13, 2021 offer, which implies a total enterprise value of $33.6 billion, including the assumption of approximately $3.8 billion of KCS debt. KCS shareholders will receive $200 in cash and 1.129 shares of CN common stock for each KCS common share, with KCS shareholders expected to own 12.6% of the combined company. This represents an implied premium of 45% when compared to KCS' unaffected closing stock price on March 19, 2021. KCS' preferred shareholders will receive $37.50 in cash for each preferred share.
>
> "We are thrilled that KCS has agreed to combine with CN to create the premier railway for the 21st century. I would like to thank the numerous stakeholders of both companies who have demonstrated overwhelming support for this compelling combination, and we look forward to delivering the many benefits of this pro-competitive transaction to them. I am confident that together with KCS' experienced and talented team, we will meaningfully connect the continent – enhancing competition, offering more choice for customers, and driving environmental stewardship and shareholder value."
>
>     - JJ Ruest, president and chief executive officer of CN
>
> "As North America's most customer-focused transportation provider, we are excited about this combination with CN, which will provide customers access to new single-line transportation services at the best value for their transportation dollar, and increase competition among the Class 1 railroads. Our companies' cultures are strongly aligned, and we share a commitment to environmental stewardship, safe operations, reliable service and outstanding performance. As a larger continental enterprise with complementary routes and an enhanced platform for revenue growth, capital investment, and job creation, we will be positioned to deliver on the transaction's powerful synergies which will create new growth

opportunities for our customers, employees, labor partners, communities and shareholders."

- Patrick J. Ottensmeyer, president and chief executive officer of KCS

"KCS is the ideal partner for CN to connect the continent, helping to drive North American trade and economic prosperity. We are confident in our ability to gain the necessary regulatory approvals and complete the combination with KCS, and we look forward to combining with KCS to create new opportunities, more choice and a stronger company."

- Robert Pace, chair of the board of CN

**Compelling Strategic and Financial Rationale**

*Creates the premier railway for the 21st century*. The combination of CN and KCS will further accelerate CN's industry-leading growth profile by connecting North America's industrial corridor to create new options for shippers and new revenue for the combined company. A CN-KCS combination will substantially help realize the many benefits of the USMCA, bringing it to life in a meaningful way.

*Brings together highly complementary networks to benefit customers.* CN and KCS will create a safer, faster, cleaner and stronger railway that is ideally positioned to support the growth of an emerging consumption-based economy through better service options and customer choice.

**Enhances competition.** This combination will create an express route that connects the U.S., Mexico and Canada with a seamless single-owner, single-operator service, and preserves access to all existing gateways to enhance route choices and ensure robust price competition.

*Delivers significant value to KCS shareholders.* CN's proposal delivers an implied premium of 45% to KCS shareholders, as well as participation in the significant upside of the combined company. Additionally, KCS shareholders will have the ability to receive the merger consideration immediately upon the closing of CN's voting trust, which is expected to be in the second half of 2021. This combination will also significantly expand the combined company's total addressable market ("TAM") – CN and KCS would target $8 billion of TAM opportunity while supporting growth across the rapidly growing USMCA network.

*Presents compelling synergies and pro-forma financial metrics.* CN currently estimates that the combination would result in EBITDA synergies approaching $1 billion annually, with the vast majority of synergies coming from additional revenue opportunities. CN anticipates the transaction to be accretive to CN's adjusted diluted earnings per share in the first full year following CN assuming control of KCS.

*Accelerates innovation.* CN and KCS share cultures that value safety, service and environmental stewardship. CN and KCS will accelerate innovation and investment as CN brings its industry-leading safety technology and fuel efficiency to the KCS network.

*Yields demonstrable benefits for the environment.* The combination will yield demonstrable benefits for the environment by converting significant volumes of truck traffic onto rails, delivering better fuel efficiency at lower cost. CN has the ability to remove more than 300 trucks from the road with every additional freight train. Because trains are 4 to 5 times more fuel-efficient than trucks, the combined company will also have an opportunity to realize a 75% reduction in greenhouse gas emissions, resulting in cleaner air for local communities along CN's line. While preventing thousands of tons of emissions from entering the atmosphere every day, the expected conversion of truck traffic to rails will also reduce traffic congestion in these regions.

*Creates opportunities for local communities.* Upon the closing of the transaction, CN will maintain corporate headquarters in Montreal, Canada, and establish Kansas City, Missouri, as the combined company's United States headquarters. The Mexico headquarters will remain in Mexico City and the operations center in Monterrey. CN will make significant infrastructure investments in key communities across the new network, including Illinois, Missouri, Michigan, Louisiana and Texas, meaning more economic opportunity and more jobs.

**Financing**

The cash portion of the consideration will be funded through a combination of cash-on-hand and approximately $19 billion of new debt. Upon closing of the transaction and including the assumption of approximately $3.8 billion of KCS debt, we expect to have outstanding debt of approximately $33 billion, representing a leverage ratio of 4.5x pro forma 2021 EBITDA3, and we expect to maintain an investment grade credit rating. Based on the proposed exchange ratio and CN's current quarterly dividend of C$0.615 per CN share, KCS shareholders are expected to receive the equivalent of $2.30 in annual dividends per KCS share.

**Approvals and Timing**

CN and KCS are confident in their ability to obtain all necessary regulatory approvals, including from the Surface Transportation Board ("STB") and the Federal Economic Competition Commission (COFECE) and Federal Telecommunications Institute (IFT) in Mexico.

CN has proposed a "plain vanilla" voting trust. Upon KCS shareholder approval of the transaction, and satisfaction of customary closing conditions, CN will acquire KCS shares and place them into the voting trust. KCS shareholders will receive

the merger consideration immediately upon the closing of CN's voting trust, which is expected to be in the second half of 2021.

Following this step, the STB and other regulatory authorities must approve CN's control of KCS. The completion of the transaction is expected to take place in the second half of 2022. Upon completion, CN and KCS will begin the integration process to realize the significant benefits of the combination for their stakeholders.

**The Proxy Misleads KCS Stockholders by Omitting Material Information**

25. On July 7, 2021, KCS filed the materially misleading and incomplete Proxy with the SEC. Designed to convince KCS's stockholders to vote in favor of the Proposed Transaction, the Proxy is rendered misleading by the omission of critical information concerning, the Company's and CN's financial projections and the financial analyses supporting the fairness opinions provided by the Company's financial advisors, Morgan Stanley and BofA.

*Material Omissions Concerning the Company's and CN's Financial Projections and Morgan Stanley's and BofA's Financial Analyses*

26. The Proxy omits material information regarding the Company's financial projections.

27. With respect to KCS's financial projections, the Proxy fails to disclose the line items underlying: (i) EBITDA; and (ii) unlevered free cash flow.

28. Similarly, with respect to CN's financial projections, the Proxy fails to disclose the line items underlying: (i) adjusted EBITDA; and (ii) unlevered free cash flow.

29. The Proxy also omits material information regarding Morgan Stanley's and BofA's financial analyses.

30. The Proxy describes Morgan Stanley's and BofA's fairness opinions and the various valuation analyses performed in support of their opinions. However, the description of Morgan Stanley's and BofA's fairness opinions and analyses fails to include key inputs and assumptions underlying these analyses. Without this information, as described below, KCS's

public stockholders are unable to fully understand these analyses and, thus, are unable to determine what weight, if any, to place on Morgan Stanley's and BofA's fairness opinions in determining whether to vote in favor of the Proposed Transaction or seek appraisal.

31. With respect to Morgan Stanley's *Discounted Cash Flow Analysis* of KCS, the Proxy fails to disclose: (i) the individual inputs and assumptions underlying the discount rates ranging from 6.4% to 7.6%; (ii) the metric to which the terminal multiples were applied to derive the terminal value and disclosure of that metric; and (iii) KCS's terminal value.

32. With respect to Morgan Stanley's *Equity Research Analysts' Price Targets* analysis of KCS, the Proxy fails to disclose: (i) the individual price targets observed; and (ii) the sources thereof.

33. With respect to Morgan Stanley's *Discounted Equity Value Analysis* of KCS, the Proxy fails to disclose: (i) the individual inputs and assumptions underlying the discount rate of 7.8%; (ii) KCS's terminal value.

34. With respect to Morgan Stanley's *Discounted Cash Flow Analysis* of CN, the Proxy fails to disclose: (i) the individual inputs and assumptions underlying the discount rates ranging from 5.5% to 6.8%; (ii) the metric to which the terminal multiples were applied to derive the terminal value and disclosure of that metric; and (iii) CN's terminal value.

35. With respect to Morgan Stanley's *Equity Research Analysts' Price Targets* analysis of CN, the Proxy fails to disclose: (i) the individual price targets observed; and (ii) the sources thereof.

36. With respect to BofA's *Discounted Cash Flow Analysis* of KCS, the Proxy fails to disclose: (i) KCS's normalized free cash flows in the terminal year; (ii) KCS's net debt; (iii) KCS's preferred equity and minority interest; (iv) KCS's fully-diluted outstanding shares; (v) the

individual inputs and assumptions underlying the discount rates ranging from 6.0% to 7.5%; and (vi) KCS's terminal value.

37. With respect to BofA's *Wall Street Analysts Price Targets* analysis of KCS, the Proxy fails to disclose: (i) the individual price targets observed; and (ii) the sources thereof.

38. With respect to BofA's *Present Value of Future Stock Price* analysis of KCS, the Proxy fails to disclose: (i) the individual inputs and assumptions underlying the discount rates of 7.7%; and (ii) and KCS's expected future dividend payments.

39. With respect to BofA's *Discounted Cash Flow Analysis* of CN, the Proxy fails to disclose: (i) CN's normalized free cash flows in the terminal year; (ii) CN's net debt; (iii) CN's net pension assets; (iv) CN's fully-diluted outstanding shares; (v) the individual inputs and assumptions underlying the discount rates ranging from 5.5% to 7.0%; and (vi) CN's terminal value.

40. With respect to BofA's *Wall Street Analysts Price Targets* analysis of CN, the Proxy fails to disclose: (i) the individual price targets observed; and (ii) the sources thereof.

41. The omission of this material information renders certain portions of the Proxy materially misleading, including, inter alia, the following sections of the Proxy: "KCS Unaudited Prospective Financial Information," "Opinion of Morgan Stanley," and "Opinion of BofA Securities."

42. Accordingly, Plaintiff seeks injunctive and other equitable relief to prevent the irreparable injury that Company stockholders will continue to suffer absent judicial intervention.

## CLAIMS FOR RELIEF

## COUNT I

### Claims Against All Defendants for Violations of Section 14(a) of the Exchange Act and Rule 14a-9 Promulgated Thereunder

43. Plaintiff repeats all previous allegations as if set forth in full.

44. During the relevant period, defendants disseminated the false and misleading Proxy specified above, which failed to disclose material facts necessary to make the statements, in light of the circumstances under which they were made, not misleading in violation of Section 14(a) of the Exchange Act and SEC Rule 14a-9 promulgated thereunder.

45. By virtue of their positions within the Company, the defendants were aware of this information and of their duty to disclose this information in the Proxy. The Proxy was prepared, reviewed, and/or disseminated by the defendants. It misrepresented and/or omitted material facts, including material information about KCS's and CN's financial projections and the financial analyses performed by the Company's financial advisors. The defendants were at least negligent in filing the Proxy with these materially false and misleading statements.

46. The omissions and false and misleading statements in the Proxy are material in that a reasonable stockholder would consider them important in deciding how to vote on the Proposed Transaction.

47. By reason of the foregoing, the defendants have violated Section 14(a) of the Exchange Act and SEC Rule 14a-9(a) promulgated thereunder.

48. Because of the false and misleading statements in the Proxy, Plaintiff is threatened with irreparable harm, rendering money damages inadequate. Therefore, injunctive relief is appropriate to ensure defendants' misconduct is corrected.

## COUNT II

### Claims Against the Individual Defendants for Violations of Section 20(a) of the Exchange Act

49. Plaintiff repeats all previous allegations as if set forth in full.

50. The Individual Defendants acted as controlling persons of KCS within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their positions as officers and/or directors of KCS, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false statements contained in the Proxy filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the various statements which Plaintiff contends are false and misleading.

51. Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

52. In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same. The Proxy at issue contains the unanimous recommendation of each of the Individual Defendants to approve the Proposed Transaction. They were, thus, directly involved in the making of the Proxy.

53. In addition, as the Proxy sets forth at length, and as described herein, the Individual Defendants were each involved in negotiating, reviewing, and approving the Proposed

Transaction. The Proxy purports to describe the various issues and information that they reviewed and considered—descriptions the Company directors had input into.

54. By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

55. As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and SEC Rule 14a-9, promulgated thereunder, by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of defendants' conduct, KCS stockholders will be irreparably harmed.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands judgment and preliminary and permanent relief, including injunctive relief, in her favor on behalf of KCS, and against defendants, as follows:

A. Preliminarily and permanently enjoining defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction and any vote on the Proposed Transaction;

B. In the event defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages to Plaintiff;

C. Directing the Individual Defendants to disseminate a Proxy that does not contain any untrue statements of material fact and that states all material facts required in it or necessary to make the statements contained therein not misleading;

D. Declaring that defendants violated Sections 14(a) and/or 20(a) of the Exchange Act, as well as SEC Rule 14a-9 promulgated thereunder;

E.       Awarding Plaintiff the costs of this action, including reasonable allowance for Plaintiff's attorneys' and experts' fees; and

F.       Granting such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury.

Dated: August 6, 2021  LONG LAW, LLC

By */s/ Brian D. Long*
Brian D. Long (#4347)
3828 Kennett Pike, Suite 208
Wilmington, DE 19807
Telephone: (302) 729-9100
Email: BDLong@longlawde.com

*Attorneys for Plaintiff*

**OF COUNSEL:**

**BRAGAR EAGEL & SQUIRE, P.C.**
Alexandra B. Raymond
810 Seventh Avenue, Suite 620
New York, NY 10019
Tel: (646) 860-9158
Fax: (212) 214-0506
Email: raymond@bespc.com

*Attorneys for Plaintiff*